## No. 9332.

## GUTHRIE *v.* GIBSON.

1. EVIDENCE—*Presumptions.* The presumption that an endorsement of a promissory note by the payee was made before maturity, is of little value. Where the endorsee took no action towards enforcing the note until more than sixteen years after its maturity. *Held* the claim was too stale to entitle him to invoke the presumption.

2. *As to action of corporate officer.* The president of a corporation was named as trustee in a deed of trust of land, securing a promissory note to such corporation. After the maturity of the note and payment thereof he executed a deed of release of the land. It was presumed that in so acting that he received payment of the debt to his company, and executed a release as trustee, and in both instances with full authority.

*Error to Kit Carson District Court, Hon. J. E. Little, Judge.*

Messrs. ALLEN & WEBSTER and Messrs. GODSMAN & GODSMAN, for plaintiff in error.

Mr. JOHN F. MAIL, for defendant in error.

. Mr. Justice Scott delivered the opinion of the court.

THIS is an action by the plaintiff in error, plaintiff below, to quiet title to the N. E. ¼ of Section 32, Township 8 S., Range 43 W. of the Sixth Principal Meridian. The complaint is in the usual form in such cases and alleges ownership, possession and title in the plaintiff, the claim of an adverse interest by the defendant, and a prayer that title be quieted in plaintiff. The answer is in the form of a general denial, with allegations of fact upon which defendant relies for title.

The undisputed facts are that George S. Winchell, who was the owner of the premises, executed a deed of trust to Henry J. Aldrich, as trustee, in June, 1889, to secure the payment of a note, payable to the Colorado Securities Company, in the sum of $400.00, due June 1st, 1894.

This trust deed contained a provision that in case of the death, inability or refusal of the trustee to act, the holder of the note might appoint a substitute trutsee. By mesne conveyances the title to the premises became vested in the plaintiff in 1891, subject to the said indebtedness.

Sometime shortly after the maturity of the note, the plaintiff transmitted to Henry J. Aldrich, or to the Colorado Securities Company, the principal sum and interest due on the note. Whereupon, and on the 27th day of December, 1894, Henry J. Aldrich, as trustee, executed a release of said trust deed, reciting full payment of the note, and that such release was executed at the request of the Colorado Securities Company.

This release was recorded January 17th, 1895. Plaintiff paid the note in good faith, but did not receive it from either Aldrich or the Securities Company, believing as she testifies that the release was all that was necessary.

During this period it appears that Aldrich was the president of the Colorado Securities Company. The plaintiff did not hear that there was any adverse claim under the note and trust deed until about fifteen years after she had made the payment and obtained the release, or about six years prior to the time she instituted this suit, and more than ten years after the note had been barred by the statute of limitations.

In 1911, the defendant Gibson, purporting to be the holder of the note, executed a writing, appointing John F. Mail as substitute trustee, who proceeded to sell the premises under the trust deed to Gibson, and to thereafter execute to Gibson his trustee's deed under which the latter now claims.

The note purports to have been assigned to Gibson by Aldrich, but such assignment bears no date and there is no evidence tending to show whether the assignment was made before or after the maturity of the note.

The plaintiff has paid all taxes assessed against the prop-

erty from the date of her purchase in 1891 to the date of the trial.

There is no evidence as to the time when Aldrich ceased to be the president of the Securities Company, or in active charge of its affairs.

Witness Patterson testified that he was appointed receiver of the Securities Company in March, 1895, and that the assignment on the note was in Aldrich's handwriting, and existed at the time of his appointment as receiver. It does not appear when the name of Gibson, assignee, which was in a different handwriting from that of Aldrich, was inserted.

The contention of the defendant is that there is a legal presumption that the note was transferred before maturity, and for such reason he must be held to be an innocent purchaser for value.

It is true that by our negotiable instrument statute that where the date of transfer does not appear, it is deemed *prima facie* to have been affected before maturity, sec. 4508, Rev. Stat. 1908. But this is merely the reinactment of the common law, and it has been generally held that such presumption is of slight value.

It is not disputed, but on the contrary affirmatively appears, that Aldrich, who was the president of the Securities Company, and the trustee under the trust deed, executed the release of the trust deed. It must therefore be assumed that in so doing he received the payment of the debt to his company, and executed his trust as trustee.

It must be assumed further that he acted in both instances in the exercise of full power and authority, in the absence of anything appearing to the contrary. Then the payee of the note received full payment of its obligation and the trustee fully performed and discharged his trust. It no longer existed.

Nor can the holder of the note under the circumstances of this case sustain a right to revive it under the plea of

the legal presumption of innocent purchaser for value, before maturity.

If we are able to gather anything from the testimony of Patterson on the subject at all, it is that he acquired the note as receiver for the company. He does not know when Aldrich signed the endorsement, nor when Gibson's name was written therein. Aldrich seems to have been beyond the confines of the United States, and Gibson, the defendant, who better than any other person ought to have known when he acquired the note, did not testify at all.

The release of the trust deed was filed for record January 17th, 1895, and the defendant purported to appoint a substitute trustee on June 20th, 1911, or more than sixteen years afterward. His claim was then too stale to invoke the presumption of an innocent purchaser for value.

Notwithstanding that he acquired his alleged trust deed on the 31st day of July, 1911, he continued to permit the plaintiff to pay the taxes on the premises up to the time of trial in 1916, without even an offer to pay them himself. The presumption of the law was not intended to shield fraud or gross wrong against innocent persons, nor to forgive inexcusable or unexplained laches or neglect, such as is so patent in this case.

The rule as to the weakness of the legal presumption is stated by Mr. Daniel, in his work on Negotiable Instruments, to be:

"But the presumption as to the time of acquiring the instrument is not a strong one. The indorsement is almost invariably without a date, and without witnesses. The transfer by delivery merely leaves no footprint upon the paper by which the time can be traced. And the presumption in favor of the holder as to the time of transfer being without any written corroborative testimony, is of the slightest nature and open to be blown away by the slightest breath of suspicion." Sec. 784 a, 5th Edition.

The reason for the rule is very clearly stated in *Snyder v. Ryley,* 6 Pa. State 164. It was there said:

"The principle which raises a presumption of consideration for the transfer raises a presumption, also, that it was made in the usual course of commercial business, and, consequently before the day of payment; for, as Lord Ellenborough said in *Tinson v. Francis*, 1 Camp. 19, 'after a bill or note is due, it comes disgraced to the endorsee, and it is his duty to make inquiries concerning it, if he takes it.' But the contract of endorsement, being without date and without witnesses is so peculiarly susceptible of fraudulent practice upon the drawer, by precluding, perhaps, a just defense on original grounds, that the presumption of fairness primarily applicable to it is not only of the slightest kind, but open to be blown away by the slightest breath of suspicion. How easy it may have been for the payee, in this instance, knowing, perhaps, that he could not recover in his own name, to slip the note into the hands of an endorsee at the end of three years; and how tempting to the latter would be the opportunity thus to receive payment of a desperate debt, may be readily conceived. There must be many such temptations in commercial affairs; and before a holder can fold his arms, and take his stand on the basis of the presumption, it surely ought to appear that there are no unusual circumstances connected with the transaction; for everything which does not naturally fall in with the current of mercantile dealing is ground of suspicion."

The circumstances of that case which were held to overcome the presumption, and place the burden upon the holder, were stated by the court to be:

"But it is agreed on all hands, that when such a case has been actually made, the defendant may make the plaintiff show when and how he became the holder. Were there not circumstances to make out such a case in the instance before us? In the first place, the plaintiff's demand, if an honest, was a stale one—a most suspicious circumstance in case of commercial credit which is founded on peculiar and exact punctuality of payment. Though the defendant had

publicly repudiated the note, it was not put in suit for three years from the day it became due; and if the plaintiff was the holder of it all that time, he ought at least to give some reason for his forbearance. In the next place, payment was not demanded at the bank of Northumberland, at which the note was made payable in the body of it—not only a circumstance of suspicion, but one which, if taken as a distinct and independent point of defense, would have embarrassed the plaintiff very seriously, and perhaps fatally. Again, it does not appear that the note was protested, as is usual in such cases, or notice of dishonor given to charge the endorser, which would have been a measure of prudence if he were not insolvent; and if he were, that would be an additional circumstance. Finally, the plaintiff refused to let the defendant inspect his books, a fact hardly reconcilable to honesty of purpose and fair dealing. All, or any of these circumstances, proved or conceded, would be sufficient to cast the burden of proving the time and consideration of the transfer on the other side, and let in the evidence of want of consideration between the original parties. It certainly was in the plaintiff's power to show the actual truth, and had he failed to satisfy the jury that he had taken the note for value, and in the regular course of mercantile business, he would have left them to find as if the cause was depending between drawer and endorser."

The case was approved in *Tams v. Wey et al.*, 13 Pa. State 222, wherein the court said:

"The note in question was near six years due, before the action was instituted upon it. This fact, of itself, raised a violent presumption that it was not indorsed in the due course of commercial business. This in connection with the other facts stated in the affidavit of defense tended to show that it was indorsed when overdue."

The plaintiff in error assumed the issue of transfer before maturity, and relies on it. The burden then under the circumstances of this case was upon him to establish the same by proof. After approving the rule as stated by Mr.

Daniel, it was said by the Supreme Court of Missouri, *Henry v. Sneed,* 99 Mo. 423, 12 S. W. 666, 17 Am. St. 580:

"The bank thus assumed the affirmative of the issue itself had made. How did it support that issue? It should certainly have done so by proof of an equally affirmative character. This it signally failed to do. Thompson does not state that the notes were transferred to the bank prior to maturity. He does not pretend to give the dates when the transfer occurred. He says he has 'a letter that will tell,' but he does not produce it, and it is only by circuitous inference and a comparison of dates that the conclusion can be reached that the notes were negotiated while current. This sort of testimony does not meet the exigencies of the rule before mentioned. The bank was challenged by its self-raised issue to give the date when the transfer of the notes occurred, and it should have done so in order to maintain its position of an innocent purchaser."

No case is cited that asserts a contrary rule to that stated by Mr. Daniel, and it is quite clear that the facts in the case at bar bring it within the rule.

Other assignments of error are urged, which present interesting questions, ably discussed by opposing counsel, but are not necessary or important to consider in this case in view of what has been said.

The judgment is reversed with instructions to enter judgment for the plaintiff in error, in accordance with the prayer of her complaint.

Judgment reversed with instructions.

Garrigues, C. J., and Allen, J., concur.